IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| LESLIE FAYE LUSK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:13cv079 |
| v. ) | |
| ) | |
| VIRGINIA PANEL CORPORATION ) | By: Hon. Michael F. Urbanski |
| ) | United States District Judge |
| Defendant. ) | |

## MEMORANDUM OPINION

Following the hearing conducted on March 26, 2014, the court granted in part and denied in part plaintiff Leslie Faye Lusk's motion for partial summary judgment, and took the issue of whether Lusk's alleged mental health problems constituted a "chronic serious health condition" pursuant to 29 C.F.R. § 825.115(c) under advisement.[1] For the reasons stated herein, Lusk's motion for partial summary judgment is **DENIED** as to this issue.

Lusk argues that she suffers from a chronic serious health condition as a matter of law under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* A chronic serious health condition is defined as follows:

> Chronic condition. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

---

[1] At the March 26, 2014 hearing, the court also denied defendant's motion for summary judgment.

29 C.F.R. § 825.115(c). However, Lusk asserts that defendant Virginia Panel Corporation's ("VPC") policies as set forth in the employee manual govern the definition of chronic serious health condition, instead of the regulations promulgated by the Department of Labor related to the FMLA. The VPC employee manual defines a chronic serious health condition, as follows:

> A chronic serious health condition is one which:
> (1) Requires periodic visits with a health care provider;
> (2) Continues over an extended period of time; and
> (3) Causes occasional rather than continuous periods of incapacity
>     (e.g. asthma, diabetes, epilepsy, etc.)

Dkt. No. 42-3, at 27.[2] As Lusk points out in her brief, the VPC policies are "more generous, in that they reference only 'periodic visits' and do not require a specific number." Pl's. Mot. Summ. J., Dkt. No. 42, at 16. Lusk cites 29 C.F.R. § 700 ("An employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA") in support of her contention that VPC's policies govern the definition of chronic serious health condition, and not the regulations promulgated by the Department of Labor.

Case law does not support this contention. Courts have interpreted 29 C.F.R. § 825.700 as not creating a federal cause of action under the FMLA to enforce voluntary employer policies which provide benefits exceeding those required by the FMLA. Rich v. Delta Airlines, 921 F. Supp. 767, 773 (N.D. Ga. 1996) ("Section 825.700 does not, and could not, however, create a federal cause of action under the FMLA to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA. The Department of Labor has no regulatory power to rewrite, and clearly did not rewrite, the FMLA in such a manner.") The court in Rich v. Delta Airlines explained as follows:

---

[2] The docket contains only an excerpt of the VPC employee manual.

2

> The purpose of [§ 825.700] is to ensure that the FMLA is not interpreted to abrogate any currently existing employee-benefit plan. Therefore, if an employer has a plan or program more generous than the FMLA, then the FMLA will not supersede or reduce those more generous benefits which the employer has chosen to provide. In essence, the regulation is merely a truism which emphasizes that employers are legally bound by valid contractual agreements made with their employees regarding employment benefits. An employer's contractual obligations are distinct, however, from the regulation at issue and the FMLA itself.

Id.; see also Barron v. Runyon, 11 F. Supp. 2d 676, 679 (E.D. Va. 1998); Covey v. Methodist Hosp. of Dyersburg, Inc., 56 F. Supp. 2d 965, 971-972 (W.D. Tenn. 1999).

However, Lusk also argues that she satisfies the FMLA regulations definition of chronic serious health condition, as she "easily establishes the existence of at least two visits in relation to her mental health conditions." Pl's. Mot. Summ. J at 16, Dkt. No. 42. Lusk asserts that her mental health conditions were chronic conditions which "required periodic visits to her physicians over a period of many years, required adjustment and checking of her medications, continued over long periods of time and cause episodic incapacity." Id.

VPC counters that Lusk does not have a chronic serious health condition as defined by the FMLA regulations. Specifically, Lusk has not been seen by a health care provider "at least twice a year" for her conditions. Resp. to Mot. Summ. J., Dkt. No. 60, at 2. Lusk's health care provider, Dr. Claire Aiken testified in her deposition that, prior to January 16, 2013, she had seen plaintiff in connection with her mental health condition three times in 2006, once in 2008, once in 2009, and three times in 2011. Lusk was not seen for her mental health conditions at all in 2012.

Lusk asserted in oral argument that the requirement that she be seen by a health care provider at least twice a year could be met by treatment that occurred subsequent to the date she

3

claims her FMLA leave began, January 16, 2013. However, Lusk's contention is not supported by case law, which indicates that the "operative time for determining whether a particular condition qualifies for FMLA purposes is the time that leave is requested or taken." Hansler v. Lehigh Valley Health Network, No. 13cv03924, 2014 U.S. Dist. LEXIS 42494, 2014 WL 1281132 (E.D. Pa. Mar. 28, 2014); see also Navarro v. Pfizer Corporation, 261 F.3d 90, 96 (1st Cir. 2001) ("[T]he crucial moment for determining if a particular condition qualifies as a disability for FMLA purposes is the time that leave is requested or taken"); Patton v. eCardio Diagnostics LLC, 793 F.Supp.2d 964, 967 (S.D.Tx. 2011); see also 29 CFR § 825.110 (d) ("The determination of whether an employee meets the hours of service requirement and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start.") Lusk was not treated at all for her mental health condition in the year preceding her alleged FMLA leave on January 16, 2013, and neither did she have a certification from her doctor that she suffered from a chronic condition.[3] In short, given the evidence addressed at summary judgment, the court cannot conclude as a matter of law that plaintiff Lusk falls within this FMLA category. The issue requires further factual development at trial.

Accordingly, plaintiff's motion for partial summary judgment asking the court to find that her alleged mental health problems constituted a "chronic serious health condition" pursuant to 29 C.F.R. § 825.115(c) is **DENIED** as there are genuine issues of material fact regarding plaintiff's FMLA eligibility that remain for trial.

---

[3] It is uncontroverted that Lusk took prescription medication for her mental health condition for years prior to January 16, 2012. See D's Mot. Summ. J. at 2, Dkt. No. 38. Under 29 C.F.R. § 825.113(c), a regimen of continuing treatment includes, "for example, a course of prescription medication."[3] However, the FMLA regulations appear to distinguish between "treatment" and "visits for treatment." Compare 29 C.F.R. § 825.113(c) with § 825.115(c).

4

An appropriate order will be entered.

Entered: April 4, 2014

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge