IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| LESLIE FAYE LUSK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 5:13cv00079 |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA PANEL CORPORATION, | ) | By: Hon. Michael F. Urbanski |
| | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendant Virginia Panel Corporation's ("Virginia Panel") Motion for Judgment as a Matter of Law, Dkt. No. 112, and plaintiff Leslie Faye Lusk's ("Lusk") Motion for Further Relief, Award of Interest, Liquidated Damages, Equitable, Declaratory, and Injunctive Relief, and Attorney's Fees and Costs, Dkt. No. 105. For the reasons set forth herein, the court will **DENY** Virginia Panel's motion and **GRANT in part** and **DENY in part** Lusk's motion.

### I.

Lusk brought this action against Virginia Panel, her former employer, alleging that it violated her rights under the Family Medical and Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA"), through both interference and retaliation, as well as the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"). At trial, the court dismissed Lusk's ADA claims. See Jury Trial Minutes, Dkt. No. 95. As to the FMLA claims, the jury returned a verdict in favor of Lusk on the interference claim and in favor of Virginia Panel on the retaliation claim. Lusk sought $47,354 in back pay, but the jury awarded her only $25,258.14. See Verdict Form, Dkt. No. 99.

Thereafter, Lusk filed her motion for further relief. Specifically, she seeks (1) prejudgment interest at a rate of 6%, (2) liquidated damages, (3) equitable relief in the form of either reinstatement or front pay, (4) declaratory relief, (5) injunctive relief in the form of expungement of her personnel records and internal distribution at Virginia Panel of the judgment along with other information regarding the FMLA, and, finally, (6) an award of attorney's fees and costs.[1] The court heard oral argument on this motion on May 8, 2014. At the hearing, the court invited subsequent briefing on the appropriate rate of prejudgment interest. Both parties have submitted additional pleadings on that issue. Virginia Panel subsequently filed its motion for judgment as a matter of law. The court heard oral argument on this motion on July 3, 2014. Both motions are now ripe for decision.

The court will address Virginia Panel's motion first, as there would be no need to consider Lusk's motion for further relief if the jury verdict in her favor is set aside.

## II.

The FMLA provides both substantive, i.e., prescriptive rights, along with proscriptive protections against retaliation for the exercise of such rights. See Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006). Claims of alleged violations of prescriptive FMLA rights are known as "interference" or "entitlement" claims, while claims alleging violations of proscriptive FMLA rights are known as "retaliation" or "discrimination" claims. Id. Here, as noted, Lusk brought both interference and retaliation claims.

"To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled."

---

[1] Attorney's fees and costs are to be briefed separately at the conclusion of all other motions.

Rodriguez v. Smithfield Packing Co., Inc., 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006); 29 U.S.C. § 2615(a)(1)); see also Riddle v. Hubbell Lighting, Inc., No. 7:12CV00488, 2013 WL 3788790, at *2 (W.D. Va. July 19, 2013) (quoting Rodriguez, 545 F. Supp. 2d at 516) (same).  In contrast, "[t]o succeed on an FMLA retaliation claim, a plaintiff must prove: '(1) that [s]he engaged in protected activity, (2) that the employer took adverse action against [her], and (3) that the adverse action was causally connected to the plaintiff's protected activity.'"  Greene v. YRC, Inc., No. CIV.A. MJG-13-0653, 2013 WL 6537742, at *8 (D. Md. Dec. 12, 2013) (quoting Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006)).  Critically, "[a] retaliation claim under the FMLA differs from an interference claim under the FMLA in that 'the interference claim merely requires proof that the employer denied the employee [her] entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent.'"  Bosse v. Baltimore Cnty., 692 F. Supp. 2d 574, 588 (D. Md. 2010) (quoting Stallings v. Hussmann Corp., 447 F.3d 1041, 1051 (8th Cir. 2006)); see also Edusei v. Adventist Healthcare, Inc., No. CIV.A. DKC 13-0157, 2014 WL 3345051, at *5 (D. Md. July 7, 2014) (quoting Bosse, 692 F. Supp. 2d at 588) (same); Ainsworth v. Loudon Cnty. Sch. Bd., 851 F. Supp. 2d 963, 977 (E.D. Va. 2012) (quoting Bosse, 692 F. Supp. 2d at 588) (same).

Virginia Panel has moved pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law on the interference claim.  It argues that judgment as a matter of law is warranted because the jury's verdict is inconsistent.  In considering this issue, it is the duty of the court "to determine whether a jury verdict can be sustained[] on any reasonable theory."  Atlas Food Sys. & Servs. Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 599 (4th Cir. 1996) (quoting Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1246 (Fed. Cir. 1989)).  "And it must, therefore, harmonize seemingly inconsistent verdicts if there is any reasonable way to do so."  Id. (citing Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119 (1963)).

3

### A. The Jury Verdict is Not Inconsistent.

The crux of Virginia Panel's argument is that the jury's verdict in favor of Lusk on the interference claim is inconsistent with its verdict in favor of Virginia Panel on the retaliation claim. Virginia Panel asserts that the only possible act of interference in this case was Lusk's termination:

> Our case is not one where the employer is alleged to have improperly denied leave, placed restrictions or burdens on the employee while on leave, or failed properly to restore the plaintiff to her position after leave. At the time the decision to terminate [Lusk] was made, there was insufficient medical evidence to evaluate [Lusk]'s qualification for FMLA. The only action alleged against the employer is the termination of employment. The question is whether employment would have been terminated had she not requested FMLA leave.

Mem. in Supp. of Mot. for J. as a Matter of Law, Dkt. No. 113, at 4. The jury's verdict on the retaliation claim, according to Virginia Panel, "establishes that the jury believed Virginia Panel's reason given for its decision to terminate [Lusk] and that her request for FMLA leave 'was not a motivating factor in its decision.'" Id. at 6.

Virginia Panel's argument makes too much of the defense verdict on the retaliation claim. It is true that the jury instructions directed the jury to find in favor of the defendant on that claim if they "believe[d] Virginia Panel's reason for its decision to terminate Ms. Lusk" and if they found that Lusk's request for FMLA leave "was not a motivating factor in its decision." Final Jury Instructions, Dkt. No. 97, at 14. But that was not the only instruction given to the jury. The jury was also instructed that the plaintiff bore the burden of proof and that they were obligated to find in Virginia Panel's favor if Lusk simply failed to meet her burden. See id. at 9 ("If Ms. Lusk fails to prove any claim by the required standard, you should find for Virginia Panel as to that claim."). Indeed, the jury instructions expressly provided that the jury could disbelieve the reason Virginia Panel gave for terminating Lusk and still not find in her favor on the retaliation claim. Id. at 14 ("If you disbelieve the reason Virginia Panel has given for its reason to terminate Ms. Lusk, you may infer, *but are not required* to infer, that Virginia Panel terminated Ms. Lusk because of her FMLA

4

protected activity." (emphasis added)). Thus, the defense verdict on this claim does not necessarily mean the jury believed the reason given by Virginia Panel for Lusk's termination. It simply means that the jury found that Lusk had failed to prove by a preponderance of the evidence all the elements of an FMLA retaliation claim.

In short, the jury did not need to believe Virginia Panel's version of events in order to return a verdict in its favor on the retaliation claim. A jury verdict in favor of a defendant is not innately vindication. It can just as plausibly be a failure on the part of the plaintiff to meet the requisite burden of proof. As such, there is nothing inherently inconsistent about finding that Lusk had met her burden of proof on the interference claim, which does not have intent as an element, while finding that she had failed to meet her burden on the retaliation claim, which does have an intent element.

**B. An Inconsistent Verdict is Not Grounds for Judgment as a Matter of Law.**

Even assuming, however, that the interference and retaliation verdicts were inconsistent, it would still be improper to grant Virginia Panel's motion. Virginia Panel has elected to seek judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) ("Rule 50(b)"). "Rule 50(b) permits a party to renew its Rule 50(a) motion post-trial, asserting the same grounds initially raised in the prior motion." Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc., 554 F. App'x 176, 185 (4th Cir. 2014) (unpublished opinion). Rule 50(a), in turn, provides in relevant part as follows:

> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

5

Fed. R. Civ. P. 50(a)(1)(A)-(B).  "But, Rule 50 does not provide a remedy for an inconsistent verdict . . . . [T]he proper remedy is not judgment as a matter of law for the losing party but rather a new trial."  Henry v. Dinelle, 929 F. Supp. 2d 107, 119 n.13 (N.D.N.Y. 2013) (quoting Frazier v. Boyle, 206 F.R.D. 480, 492-93 (E.D. Wis. 2002)), aff'd, 557 F. App'x 20 (2d Cir. 2014).  Indeed, it is well-settled within the Fourth Circuit that "the proper remedy for an inconsistent verdict [is] a new trial, not judgment as a matter of law[.]"  Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 598 (4th Cir. 1996) (citing Griffin v. Matherne, 471 F.2d 911, 915 (5th Cir. 1973)); see also Essex v. Prince George's Cnty. Maryland, 17 F. App'x 107, 117 (4th Cir. 2001) (unpublished per curiam opinion) (quoting Atlas Food, 99 F.3d at 598) (same); Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254, 261 (4th Cir. 1998) (citing Atlas Food, 99 F.3d at 598) ("We first note that the proper remedy for an inconsistent jury verdict is a new trial, not judgment as a matter of law . . . .").  In Castles Auto & Truck Service, Inc. v. Exxon Corp., 125 F.3d 847, 1997 WL 585748 (4th Cir. 1997) (unpublished per curiam table decision), the Fourth Circuit explicitly found that it was error for the district court to grant judgment as a matter of law based on an apparent inconsistency in the jury's verdict and remanded for determination of whether a new trial was warranted.  Id. at *2.

The impropriety of granting judgment as a matter of law based on an inconsistent jury verdict is made evident by the simple fact that it is no more likely that jury erred on the interference claim than it is that it erred on the retaliation claim.  For example, the jury could have felt that a verdict in Lusk's favor on the retaliation claim was redundant given her victory on the interference claim.  As the Fourth Circuit recently noted in the context of an allegedly inconsistent criminal verdict, "it can never be known 'whose ox has been gored.'"  United States v. Louthian, No. 13-4231, 2014 WL 2809071, at *9 (4th Cir. June 23, 2014) (quoting United States v. Powell, 469 U.S. 57, 65 (1984)).  As such, Virginia Panel "may not simply assume . . . that the 'right' verdict[] [is] the one[] in [its] favor."  Will v. Comprehensive Accounting Corp., 776 F.2d 665, 678 (7th Cir. 1985).

6

Indeed, Virginia Panel's argument that the alleged inconsistent verdicts entitle it to a judgment as a matter of law pursuant to Rule 50 is all but identical to the one rejected in Wallace v. Poulos, 861 F. Supp. 2d 587 (D. Md. 2012). In Wallace, the court observed that:

> Throughout their Rule 50(b) motion, Plaintiffs assert that the court must grant their request for judgment as a matter of law because the jury found in their favor on many of the federal and state constitutional claims and on the state law claims for false arrest/imprisonment. To the extent that Plaintiffs seek to argue that the jury's verdicts are inconsistent and that the court should grant judgment in their favor for this reason, they have failed to pursue the proper remedy.

Id. at 598 n.10 (citing Talkington, 152 F.3d at 257; Atlas Food, 99 F.3d at 598). Here, Virginia Panel made clear both in its pleadings and at oral argument that it is not seeking a new trial, but instead judgment as a matter of law. Thus, even assuming the jury's verdicts on interference and retaliation were inconsistent, Virginia Panel has failed to seek the proper remedy.

For these reasons the Motion for Judgment as a Matter of Law will be denied.

### III.

Because the court will deny Virginia Panel's motion, it must now address Lusk's motion for further relief. As set forth below, the court will grant in part and deny in part this motion.

**A. Prejudgment Interest.**

"Under the FMLA, an employer shall be liable for the pre[]judgment interest on the amount of any wages, salary, employment benefits, or other compensation denied or lost to an employee by reason of the FMLA violation." Dotson v. Pfizer, Inc., 558 F.3d 284, 301 (4th Cir. 2009) (internal quotation marks and alterations omitted) (quoting 29 U.S.C. § 2617(a)(1)(A)(i)-(ii) and citing Hite v. Vermeer Mfg. Co., 446 F.3d 858, 869 (8th Cir. 2006)). The Fourth Circuit has made clear that prejudgment interest on FMLA damages is mandatory. Id. at 302.

Per the statute, prejudgment interest is awarded at the prevailing rate. See 29 U.S.C.A. § 2617(a)(1)(A)(ii). "The statute does not define 'the prevailing rate,' and trial courts have exercised

7

their discretion to find different methodologies of calculation appropriate in different contexts." Bell v. Prefix, Inc., 500 F. App'x 473, 2012 WL 4069589, at *474 (6th Cir. 2012) (unpublished table decision) (collecting cases); see also Lane v. Grant Cnty., No. CV-11-309-RHW, 2013 WL 5306986, at *10 (E.D. Wash. Sept. 20, 2013) (citing Bell, 2012 WL 4069589, at *474) ("District courts have exercised their discretion to find different methodologies of calculation appropriate in different contexts.").

As one court has observed, "[w]hile there is a plethora [of] circuit court cases holding that district courts have wide discretion on the issue of prejudgment interest, including what rate to use and how to calculate it, there is a surprising lack of consensus on exactly what rate to use and exactly how to apply it." Staples v. Parkview Hosp., Inc., No. 1:07-CV-327, 2010 WL 780204, at *11 (N.D. Ind. Mar. 3, 2010). District court have variously utilized (1) the state statutory rate, (2) the IRS prime rate, and (3) the federal post-judgment interest rate set by 28 U.S.C. § 1961. See, e.g., Bell, 2012 WL 4069589, at *474-75 (listing district court decisions from the Sixth, Seventh, and Eighth Circuits applying each of these three methodologies).

Here, Lusk initially argued that the court should select the Virginia state statutory rate of 6%, see Va. Code § 6.2-302(B), because her "wage and benefit losses are based on the underlying employer/employee relationship and such an interest rate is necessary to fully compensate [her]." Br. in Supp. of Mot. for Further Relief, Dkt. No. 106, at 4. In support of this argument, Lusk cited Dickenson-Russell Coal Co., LLC v. International Union, United Mine Workers of America, 840 F. Supp. 2d 961, 970 (W.D. Va. 2012), in which the court used the state statutory rate when awarding prejudgment interest in a case upholding a labor arbitration award. After the court addressed the issue of prejudgment interest at oral argument, Lusk slightly modified her request, and now argues that the court should "award the prevailing rate of between 3.25% [i.e., the current prime rate] and 6%." Suppl. Br. in Supp. of Mot. for Further Relief, Dkt. No. 111, at 5. Virginia Panel retorts that

8

the court should select the rate set by 28 U.S.C. § 1961 and notes this court's decision in Sky Cable, LLC v. Coley, No. 5:11CV00048, 2014 WL 279592 (W.D. Va. Jan. 23, 2014), in which the court found there was no reason not to apply the § 1961 rate for prejudgment interest on a "case involving a violation of federal law." Id. at *4.

Neither Dickenson-Russell nor Sky Cable, however, involved statutes directing the court to award prejudgment interest at the "prevailing rate" as the FMLA does. Thus, both of those cases are distinguishable from the present circumstances. Instead, the court will follow what appears to be the prevailing trend among recent FMLA decisions and utilize the IRS prime rate. See, e.g., Carroll v. Sanderson Farms, Inc., No. CIV.A. H-10-3108, 2014 WL 549380, at *4 n.1 (S.D. Tex. Feb. 11, 2014) (collecting cases) ("The Court observes that 3.25% is the federal prime rate and an appropriate rate for an FMLA case."); Lane v. Grant Cnty., No. CV-11-309-RHW, 2013 WL 5306986, at *10 (E.D. Wash. Sept. 20, 2013) (applying the prime rate based on the reasoning set forth in Gutierrez v. Grant Cnty., No. CV-10-48-LRS, 2011 WL 5279017 (E.D. Wash. Nov. 2, 2011)); Gutierrez, 2011 WL 5279017, at *4 ("Considering the compensatory purpose of prejudgment interest, this court finds the 'prime rate' is a fair measure for prejudgment interest, especially in light of the historical reduction of interest rates while this case has been pending."); Neel v. Mid-Atl. of Fairfield, LLC, No. SAG-10-CV-405, 2012 WL 3264965, at *12 (D. Md. Aug. 9, 2012) (citation omitted) ("Courts often award pre-judgment interest at the prime interest rate. In this case, the Court finds that the appropriate rate of prejudgment interest to properly compensate [the plaintiff] is the prime interest rate, compounding annually.").

For these reasons, the court will order prejudgment interest at the IRS prime rate of 3.25%. Although Lusk requests that the interest be compounded bi-monthly, she has provided no authority for doing so. The court will instead compound the interest annually, following the decision in Neel. 2012 WL 3264965, at *12.

9

B. **Liquidated Damages.**

"The FMLA entitles a wronged employee to an additional award of liquidated damages equal to the sum of the amount awarded for damages and the interest on that amount." Dotson v. Pfizer, Inc., 558 F.3d 284, 302 (4th Cir. 2009) (citing 29 U.S.C. § 2617(a)(1)(A)(iii)). Such an award of liquidated damages is normally "awarded automatically." Id. Critically, however, if an employer "'proves to the satisfaction of the court' that the violation of [the FMLA] 'was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation,' the court, in its discretion, may choose not to award liquidated damages." Id. (quoting 29 U.S.C. § 2617(a)(1)(A)(iii)). An employer "has a 'plain and substantial burden' to persuade the court that its failure was in good faith and that it would be unfair to impose liquidated damages." Id. (citing Mayhew v. Wells, 125 F.3d 216, 220 (4th Cir. 1997).[2]

An employer's good faith is measured by an objective standard. Id. (citing Mayhew, 125 F.3d at 220).

> Good faith requires more than a showing of ignorance of the prevailing law or uncertainty about its development. It is not enough to show that a violation was not purposeful. Nor is good faith demonstrated by the absence of complaints on the part of employees or conformity with industry-wide practice. Good faith requires that an employer first take active steps to ascertain the dictates of the law and then move to comply with them.

Thorson v. Geminin, Inc., 96 F. Supp. 2d 882, 891 (N.D. Iowa 1999) (citing Reich v. Southern New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997)), aff'd sub nom. Thorson v. Gemini, Inc.,

---

[2] Mayhew is a case interpreting the liquidated damages provision of the Fair Labor Standard Act. Courts have explicitly acknowledged that it is proper to "look to decisions interpreting the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, for guidance on the liquidated damages provisions of the FMLA because the FMLA's enforcement scheme is modeled on the enforcement scheme of the FLSA and the relief provided in the FMLA also parallels the provisions of the FLSA." Pagan-Colon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 14 n.7 (1st Cir. 2012) (internal alterations and quotation marks omitted) (citing Frizzell v. Sw. Motor Freight, 154 F.3d 641, 644 (6th Cir. 1998)) (other citations omitted).

10

205 F.3d 370 (8th Cir. 2000); cf. Lockwood v. Prince George's Cnty., 217 F.3d 839 (4th Cir. 2000) (unpublished per curiam table decision) (quoting Reich, 121 F.3d at 71) ("[G]ood faith 'requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them.'").

Virginia Panel asserts that it acted in good faith and that the court should therefore not award liquidated damages. As evidence of such good faith, Virginia Panel first points to the jury's verdict on the retaliation claim. The court agrees that there is significance in the jury's verdict, which demonstrates that Lusk failed to prove that her termination was in bad faith or was done with discriminatory intent. In Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336 (4th Cir. 1994), the Fourth Circuit found that the district court did not abuse its discretion in declining to award liquidated damages in an Equal Pay Act[3] case where the jury found the violation not willful. The court reasoned that "a jury's finding of non-willful behavior can provide an objective basis on which a judge could premise a finding of good faith." Id. at 357 (discussing Fowler v. Land Management Groupe, Inc., 978 F.2d 158 (4th Cir. 1992)). Thus, the jury's verdict on the retaliation claim provides an objective basis on which the court can premise a finding of good faith.

Also significant is the fact that no evidence was presented at trial that Lusk's FLMA rights were interfered with in a systemic matter. The case centered on a single episode. Additionally, Virginia Panel points to evidence adduced at trial that it has provided FMLA leave to other employees even when they did not specifically request it. See Resp. in Opp'n to Mot. for Further Relief, Dkt. No. 107, at 9-10. Virginia Panel also notes that Lusk herself was routinely provided FMLA paperwork prior to the incident giving rise to this action. Id. at 10. Such affirmative evidence (as opposed to a mere "absence of complaints on the part of employees") helps further

---

[3] The Equal Pay Act amended the FLSA. Dole v. Shenandoah Baptist Church, 899 F.2d 1389, 1391 n.1 (4th Cir. 1990).

11

establish that Virginia Panel has taken active steps to ascertain the dictates of the FMLA and then move to comply with them. In other words, the FMLA interference found by the jury appears to be an anomaly, not representative of a pattern of violations. Indeed, the totality of the evidence at trial was that Virginia Panel knew of and frequently complied with the requirements of the FMLA. Clearly the jury found that it was mistaken when it attempted to comply with those requirements in the context of Lusk's termination, but such a finding does not inevitably lead to the conclusion of bad faith. The court, having observed the full context of the proceedings, believes that the evidence in fact establishes sufficient good faith on the part of Virginia Panel to render an award of liquidated damages unjust.

Given this unique set of circumstances, the court believes it appropriate to exercise its discretion by declining to award liquidated damages.

### C. Equitable Relief: Reinstatement.

In additional to damages, the FMLA also entitles a wronged employee to "such equitable relief as may be appropriate, including employment, reinstatement, and promotion.'" Dotson v. Pfizer, Inc., 558 F.3d 284, 300 (4th Cir. 2009) (quoting 29 U.S.C. § 2617(a)(1)(B)). "The remedy is tailored to the harm suffered." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). While the FMLA itself does not include front pay among the enumerated equitable remedies available under the statute, the Fourth Circuit has recognized that front pay is "a proper form of relief that is 'an alternative and complement to reinstatement.'" Dotson, 558 F.3d at 300 (quoting Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 307 (4th Cir. 1998)). Front pay is utilized when reinstatement is not appropriate. Duke v. Uniroyal Inc., 928 F.2d 1413, 1423 (4th Cir. 1991) (collecting cases). Court have found reinstatement inappropriate in particular circumstances, such as when an employer has demonstrated such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible, or when the litigation itself has created such

12

animosity between the parties that any potential employer-employee relationship has been irreparably damaged. Id. at 1423 (citing E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d 1166, 1172 (10th Cir. 1985); Whittlesey v. Union Carbide Corp., 742 F.2d 724, 728 (2d Cir. 1984)). Nevertheless, "reinstatement . . . is the much preferred remedy." Id. at 1424.[4] This is because

> [w]hile an employer-employee relationship may not be fully restored to its pre-violation condition by reinstatement, the chances of a proper restoration are greater than by guessing, with an award of front pay, whether and for how long a plaintiff will work in the future. Under one scenario of future events, the plaintiff could be left without a remedy and under another the plaintiff could end up with a windfall. In either case, an injustice is done to one party or the other.

Id. Here, Virginia Panel argues that reinstatement is inappropriate.[5] It asserts that "[b]oth parties agree that the relationship between the parties is such that reinstatement would not be advisable at this point," noting that Lusk "would accept reinstatement" but is "apprehensive about it." Resp. in Opp'n to Mot. for Further Relief, Dkt. No. 107, at 3-4. However, Lusk unambiguously clarifies in her reply brief that she is seeking reinstatement. See Suppl. Br. in Supp. of Mot. for Further Relief,

---

[4] Duke is a case interpreting the Age Discrimination in Employment Act. However, in Cline v. Wal-Mart Stores, Inc., 144 F.3d 294 (4th Cir. 1998), the Fourth Circuit stated:

> In Duke, we held that front pay, as an alternative or complement to reinstatement, is an equitable remedy best determined by the district court rather than the jury. See 928 F.2d at 1424. We emphasized that "[t]he infinite variety of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages." Id. We find no reason to deviate from that rule in the context of the FMLA.

Id. at 307 (short cite added). The Fourth Circuit then remanded the case so that the district court could determine, "light of [its] discussion in Duke, whether front pay should be awarded and, if so, in what amount." Id. at 307 n.3. In light of Cline, the court believes that the Fourth Circuit's preference for reinstatement as set forth in Duke applies with equal force to the FMLA.

[5] Even thought it argues reinstatement is inappropriate, Virginia Panel also argues that the court should award Lusk zero front pay. The court need not address this argument because it finds reinstatement is the proper equitable remedy.

13

Dkt. No. 111, at 7 ("The Plaintiff seeks reinstatement to her job at Virginia Panel."). After much consideration, the court agrees that this is the proper remedy.

While it is true that reinstatement would undoubtedly result in some tension, it is difficult to conceive of a frictionless post-litigation restatement scenario. If the simple assertion at trial of facts that necessarily imply the opposing party is being untruthful was sufficient grounds not to employ reinstatement, it would not be the favored remedy. Cf. id. at 9 ("Hurt feelings are natural in litigation. . . . If being hurt and uncomfortable were enough to establish that reinstatement was not appropriate, the preferred remedy of reinstatement would never be accomplished."). In short, for reinstatement to be inappropriate there must be more than the typical ill-will generated by the adversarial process.

In this case, the court does not believe that "to order the plaintiff reinstated would be a harbinger of disaster and a catalyst to more litigation." Hoffman v. Nissan Motor Corp. in U.S.A., 511 F. Supp. 352, 355 (D.N.H. 1981) (rejecting reinstatement where the defendant willfully violated the ADEA and demonstrated a willful and intransigent attitude throughout the trial). The evidence at trial was that, prior to her termination, Lusk was a long-term employee at Virginia Panel with fully acceptable evaluations. Here, while the parties' relationship may not be capable of being fully restored to its pre-litigation condition, there is nothing sufficiently unique about the facts and circumstances of this case as to warrant abandoning the much preferred remedy of reinstatement. The court believes that both parties will put forward a good faith effort to recapture as much of their prior positive working relationship as possible.

**D. Declaratory Relief.**

The Federal Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

14

> It is within the discretion of the district court to grant declaratory relief and such relief is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

Dickerson v. TLC The Laser Eye Ctr. Inst., Inc., 493 F. App'x 390, 396 (4th Cir. 2012) (unpublished per curiam opinion) (alteration in original) (quoting Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996)); see also Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) (holding that granting declaratory relief rests in the court's discretion).

Here, the court can discern no "useful purpose" in issuing declaratory judgment. In this matter, as the jury has already reached a verdict for Lusk on the interference claim, a declaratory relief would effectively do "little more than simply affirm the jury's verdict." Marsal v. E. Carolina Univ., No. 4:09-CV-126-FL, 2012 WL 3283435, at *9 (E.D.N.C. Aug. 10, 2012) (citing Sheppard v. Riverview Nursing Ctr., Inc., 948 F. Supp. 502, 503 (D. Md. 1996)).[6] Courts have declined to grant declaratory relief in instances where "a declaratory judgment would serve no useful purpose in clarifying or settling the legal relations of the parties." Int'l Wood Processors v. Power Dry, Inc., 593 F. Supp. 710, 736 (D.S.C. 1984) (citing Maryland Cas. Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971); Maryland Cas. Co. v. Boyle Construction Co., 123 F.2d 558 (4th Cir. 1941)), aff'd, 792 F.2d 416 (4th Cir. 1986). Here, "[t]he jury award [and the additional further relief awarded by the court] has compensated [Lusk] fully for [her] losses, and, as a result, there is no need for declaratory relief." Id.

**E. Injunctive Relief.**

Under the FMLA, "[i]njunctive relief may be available as appropriate." Coleman v. Potomac Elec. Power Co., 281 F. Supp. 2d 250, 254 (D.D.C. 2003) (citing 29 U.S.C. § 2617(a)(1)(B)). Again,

---

[6] The court in Marsal did award declaratory relief, but unlike this case the plaintiff in Marsal was not awarded any damages and the defendant did not oppose declaratory judgment. See 2012 WL 3283435, at *3, *9.

15

"[t]he remedy is tailored to the harm suffered." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). Here, Lusk is requesting injunctive relief as follows:

> [A]n Order to (1) expunge all Virginia Panel's personnel records (formal and informal) regarding Plaintiff of the negative personnel information related to the pretext relied upon by Virginia Panel at trial; and (2) require that Virginia Panel publish and distribute the judgment entered in this matter internally to all managers and supervisors together with (a) the Virginia Panel FMLA policy, (b) a written commitment not to violate the FMLA against its employees claiming rights under the FMLA, and (c) information directing these Virginia Panel employees how to redress suspected wrongful conduct under the FMLA.

Br. in Supp. of Mot. for Further Relief, Dkt. No. 106, at 17. The court does not believe such injunctive relief to be appropriate. The court is ordering reinstatement, and thus Lusk need not be concerned with prospective employers seeking information from Virginia Panel. Moreover, defense counsel has represented that "it is the policy of Virginia Panel when inquiries are made about former employees to provide the inquiring employer the dates of employment and nothing further." Resp. in Opp'n to Mot. for Further Relief, Dkt. No. 107, at 11.

Additionally, the jury verdict itself puts Virginia Panel on notice of the requirements of the FMLA. Moreover, there was no evidence presented at trial that Lusk's FMLA rights were interfered with in a systemic matter. The case centered on a single episode. The question presented to the jury was whether Virginia Panel interfered with Lusk's FMLA rights by terminating her (the jury concluded yes) and whether her termination was motivated by a discriminatory intent to retaliate against her for the exercise of her FMLA rights (the jury concluded no).

In short, the court is confident that, under the particular circumstances of this case, Lusk has been made whole by the other various forms of relief she has been awarded. As such, it would be improper to award further injunctive relief.

## IV.

While both parties may have complaints with elements of the verdict, the end result was well within the jury's prerogative. The jury's verdict entitles Lusk to some additional relief, but not all of the relief she seeks is appropriate under the facts of this case. As such, Virginia Panel's Motion for Judgment as a Matter of Law, Dkt. No. 112, must be denied and Lusk's Motion for Further Relief, Award of Interest, Liquidated Damages, Equitable, Declaratory, and Injunctive Relief, and Attorney's Fees and Costs, Dkt. No. 105, shall be granted in part and denied in part by an appropriate accompanying Order.

The clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered: August 11, 2014

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge